UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
Andre E. Biggs,

Petitioner,

**MEMORANDUM & ORDER**
23-CV-06634 (DG)

-against-

Hill,

Respondent.
---------------------------------------------------------------X
DIANE GUJARATI, United States District Judge:

By Petition filed September 6, 2023, *pro se* Petitioner Andre E. Biggs, then incarcerated at Wyoming Correctional Facility, commenced this action pursuant to 28 U.S.C. § 2254, challenging his 2019 conviction in New York State Supreme Court, Queens County (the "Queens County Supreme Court"), arising from a traffic stop in Queens, New York and searches of Petitioner's vehicle. *See* Petition ("Pet."), ECF No. 1.[1] In summary, Petitioner alleges that he was deprived of a full and fair hearing on his Fourth Amendment claims. *See generally* Pet.

For the reasons set forth below, the Petition is DENIED.

---

[1] Under the "prison mailbox rule," the operative filing date is the date on which the Petition was delivered to prison officials for forwarding to the Court. *See Noble v. Kelly*, 246 F.3d 93, 97-98 (2d Cir. 2001). Here, Petitioner does not indicate the date on which he delivered the Petition to prison officials. *See generally* Pet. The Petition was received by the Court on September 6, 2023.

When citing to the Petition, the Court refers to the page numbers generated by the Court's electronic case filing system ("ECF").

## BACKGROUND

### I. State Proceedings[2]

#### A. Traffic Stop and Searches of Vehicle

On July 7, 2016, police officers conducted a traffic stop in Queens, New York during which they searched the interior and trunk of the vehicle Petitioner was driving and ultimately arrested Petitioner, who was then transported to the 113th police precinct station house. Petitioner's vehicle was impounded and an inventory search was conducted at the precinct station house by Officer Kenneth Sepulveda. The inventory search was suspended and a search warrant was obtained, pursuant to which the vehicle was thereafter searched. During the search conducted pursuant to the warrant, officers recovered marijuana, a loaded firearm, and $8,290.[3]

#### B. Indictment

On August 2, 2016, Petitioner was charged in a seven-count Indictment: Count One charged Petitioner with Criminal Possession of a Weapon in the Second Degree, in violation of N.Y. Penal Law § 265.03-1B; Count Two charged Petitioner with Criminal Possession of a Weapon in the Second Degree, in violation of N.Y. Penal Law § 265.03-3; Count Three charged Petitioner with Criminal Possession of Marihuana in the Fourth Degree, in violation of N.Y. Penal Law § 221.15; Count Four charged Petitioner with Unlawful Possession of Marihuana, in violation of N.Y. Penal Law § 221.05; Count Five charged Petitioner with Operating a Motor

---

2 The following facts are taken from the State Court Record ("S.R."), ECF No. 8-1, which includes the relevant state court decisions. Familiarity with the procedural history and background with respect to the state court proceedings is assumed herein.

3 With respect to the reason(s) for the traffic stop, Officer Sepulveda testified at a hearing, discussed further below, that Petitioner's vehicle had excessively-tinted windows and that Officer Sepulveda detected a strong odor of marijuana emanating from the vehicle. Officer Sepulveda testified that the inventory search at the precinct station house was suspended after the smell of marijuana was detected and certain items were observed in the vehicle.

Vehicle with a Tinted Window, in violation of N.Y. Vehicle and Traffic Law § 375-12A-B; Count Six charged Petitioner with Operating a Motor Vehicle with an Obstructed Windshield, in violation of N.Y. Vehicle and Traffic Law § 375-30; and Count Seven charged Petitioner with Unlawful Possession of Marihuana, in violation of N.Y. Penal Law § 221.05. *See* S.R. 7.

**C. Pretrial Motions**

Prior to trial, Petitioner – at the time represented by counsel – filed an Omnibus Motion that, as relevant here, included (1) a "Motion to Suppress Physical Evidence and/or Pre-Trial Mapp/Dunaway Hearing" (the "Suppression Motion") and (2) a "Motion for Controversion of Search Warrant" (the "Motion to Controvert"). *See* S.R. 13-32.

In the Suppression Motion, Petitioner argued, *inter alia*, that "[u]pon information and belief there was no search warrant issued to seize [the physical evidence recovered in connection with this case] and that there was no probable cause to seize property from [Petitioner] or from a constitutionally protected area" and that "the officer's actions were illegal as [Petitioner] was committing no crime, not involved in any suspicious activity or any overt criminal activity, nor did he abandon any property rights or his expectation of privacy, when the police approached him." *See* S.R. 20. Petitioner requested that the court "suppress any items seized or in the alternative hold a pre-trial *Mapp*/*Dunaway* hearing to determine if the evidence was seized in accordance with constitutionally accepted principles." *See* S.R. 22.

In the Motion to Controvert, Petitioner argued, *inter alia*, that certain statements in Officer Sepulveda's affidavit in support of the search warrant "are completely false." *See* S.R. 24-32. Petitioner requested that "the motion to controvert be granted, or, in the alternative, that a hearing be held so that [Petitioner] may challenge the judicial determination that probable cause existed for the search warrant." *See* S.R. 26.

The People filed an Omnibus Response, dated November 22, 2016, in which the People denied the allegations set forth in Petitioner's moving papers with respect to the Suppression Motion but consented to a *Mapp* hearing, *see* S.R. 35, and urged the court to deny the Motion to Controvert, arguing, *inter alia*, that the claim made in the motion, even if true, was not material to the finding of probable cause, *see* S.R. 36-37.

By Decision and Order of the Court dated January 19, 2017, the Queens County Supreme Court granted the Suppression Motion "to the extent that a *Huntley*/*Mapp*/*Dunaway* hearing [was] ordered," limiting the *Mapp* hearing "to property recovered prior to the issuance of the search warrant," and granted the Motion to Controvert "to the extent that a hearing [was] ordered to determine the veracity of the deponent Police Officer Sepulveda's sworn statements." *See* S.R. 44-48.

The Queens County Supreme Court held a hearing on January 31, 2017 and April 25, 2017 (hereinafter, the "Suppression Hearing"). *See* S.R. 49-150. At the Suppression Hearing, Officer Sepulveda and Avelyon Matthew – a civilian witness who filmed part of the traffic stop – testified. Officer Sepulveda's testimony addressed, *inter alia*, what occurred during the traffic stop and the reason(s) for the traffic stop; the arrest of Petitioner; what was smelled and observed during the inventory search of the vehicle; and the suspension of the inventory search and seeking of a search warrant. Petitioner was represented by counsel at the Suppression Hearing and Petitioner's counsel examined both witnesses. Notably, Petitioner's counsel both cross-examined Officer Sepulveda and later recalled him as a witness for further questioning.

On June 13, 2017, after hearing the parties further, the Queens County Supreme Court rendered a decision, denying Petitioner's requested relief. *See* S.R. 153-65, 1197. In so doing, the court set forth that it found the testimony of both Officer Sepulveda and Mr. Matthew to be

credible and further stated, *inter alia*:

> [T]his entire search could have been conducted right at the scene but they did not do it that way. They brought the car back. Did an inventory. It's fine that it was properly setout as the officer was doing but once again it's not that significant because there was probable cause for this search right at the scene to begin with. Then they go further and get a search warrant so I find that none of the evidence, physical evidence in this vehicle is suppressible. It could have been an inclusive search right at the scene. It was probable cause to do so. Based upon the only stop and the marijuana smell . . . .

*See* S.R. 157, 164-65.[4]

**D. Trial and Sentencing**

Petitioner's jury trial commenced on November 13, 2019 and concluded on November 21, 2019. *See* S.R. 305. At trial, Officer Sepulveda again testified and was cross-examined by Petitioner's counsel. *See* S.R. 666-790. Officer Sepulveda's testimony addressed, *inter alia*, what occurred during the traffic stop and the reason(s) for the traffic stop; the arrest of Petitioner; the inventory search of Petitioner's vehicle; the search warrant; and the search pursuant to the search warrant.

On November 21, 2019, the jury returned its verdict, finding Petitioner guilty as to Counts One, Two, Three, and Four and not guilty as to Counts Five and Six. *See* S.R. 1000-01.[5]

On December 11, 2019, Petitioner was sentenced to, in aggregate, imprisonment of five years and five years of post-release supervision. *See* S.R. 1010-30.[6]

---

[4] Petitioner filed a Supplemental Motion, dated February 26, 2018, in which Petitioner sought suppression of certain physical evidence. *See* S.R. 190-99 (referencing "a cup or water bottle"). The Petition does not appear to relate to the physical evidence addressed in the Supplemental Motion.

[5] Because Count Six of the Indictment was dismissed prior to trial, *see* S.R. 329-30, the reference here to Count Six is to what was originally Count Seven of the Indictment.

[6] Publicly available records reflect that Petitioner commenced post-release supervision.

**E. Appeal**

On April 19, 2021, Petitioner – at the time represented by counsel – appealed the judgment of conviction to the New York Supreme Court, Appellate Division, Second Department (the "Appellate Division"). *See* S.R. 1034-99. On appeal, Petitioner argued that the judgment of conviction should be vacated and the Indictment dismissed and, alternatively, that the judgment of conviction should be vacated and the case remanded for a new trial. *See* S.R. 1097.

More specifically, as relevant here, Petitioner argued two points: (1) that "[t]he traffic stop of [Petitioner's] vehicle was unconstitutional given that the testimony supporting it was legally insufficient and, in any event, was patently incredible thus requiring that all property recovered pursuant to the stop be suppressed" and (2) that "[t]he hearing court erred in failing to controvert the search warrant that was based on the material false statement that the observations establishing probable cause for the warrant were made during a purported inventory search of [Petitioner's] vehicle, although no evidence was presented that the police were required to impound the vehicle, that the search was conducted pursuant to an established procedure, or that the warrantless search leading to the issuance of the warrant was otherwise lawful." *See* S.R. 1066-87. Petitioner further argued that all of the claims raised in connection with the first point were "properly preserved because [Petitioner] moved to suppress based on the unlawful stop of his vehicle and specifically challenged the credibility of Officer Sepulveda in his omnibus motion and at the hearing" and that all of the claims raised in connection with the second point were "properly preserved because [Petitioner] moved to suppress and to controvert the search warrant." *See* S.R. 1073, 1087. Petitioner also argued that to the extent that any claims raised by Petitioner in his brief on appeal with respect to the first and second points were not preserved,

trial counsel was ineffective for failing to raise them and such failure could not have been part of any reasonable strategy and that even if the claims are unpreserved, the Appellate Division should reach them in the interest of justice. *See* S.R. 1073, 1087.

The People raised a variety of arguments in opposition. As relevant here, the People argued that "[w]hen Sergeant Sepulveda observed 'dark tints' on the rear window of [Petitioner's] vehicle, and smelled marijuana emanating from the vehicle, he had probable cause to believe that the tint was illegal and illegal contraband was inside [Petitioner's] vehicle, and his decision to stop the car was reasonable" and "[Petitioner's] claims to the contrary lack merit and are partially unpreserved;" and that "[t]he vehicle impoundment and search at the precinct were lawful, and the hearing court properly denied [Petitioner's] Suppression Motion and Motion to Controvert the Search Warrant" and "[Petitioner's] claims to the contrary are wholly unpreserved and lack merit." *See* S.R. 1131-53.

By Decision & Order dated September 28, 2022, the Appellate Division ordered that "the appeal from so much of the judgment as convicted [Petitioner] of criminal possession of marijuana in the fourth degree and unlawful possession of marijuana is dismissed as academic"[7] and ordered that "the judgment is affirmed insofar as reviewed." *See* S.R. 1196. The Appellate Division stated that "upon consideration of all relevant facts and circumstances, the testimony of Officer Sepulveda at the suppression hearing was not incredible or patently tailored to meet constitutional objections" and found that "the Supreme Court properly credited his testimony,"

---

[7] The Appellate Division explained: "[Petitioner's] convictions of criminal possession of marijuana in the fourth degree and unlawful possession of marijuana became a nullity by operation of law, independently of any appeal, and without requiring any action by [the Appellate Division]." *See* S.R. 1200 (citations omitted).

The September 28, 2022 Decision & Order is reported at *People v. Biggs*, 175 N.Y.S.3d 117 (App. Div. 2022).

noting that "[a] hearing court's credibility determinations are accorded great weight on appeal, as that is the court which has the ability to see, hear, and observe the witnesses before it." *See* S.R. 1198. The Appellate Division further stated that "window tint violations are a recognized basis for stopping a motor vehicle;" that "Officer Sepulveda's testimony that he could not see into [Petitioner's] vehicle meets [the applicable legal test];" that "[a]lternatively, the vehicular stop was lawful based upon Officer Sepulveda's detection of the smell of marijuana which he attributed to [Petitioner's] vehicle;" and that "[o]nce the vehicle was stopped, probable cause developed at the scene of the traffic stop for [Petitioner's] arrest on a marijuana-related charge." *See* S.R. 1198-99.

The Appellate Division also set forth that certain of Petitioner's arguments on appeal were unpreserved for appellate review. More specifically, the Appellate Division set forth that Petitioner's "contention on appeal that the impoundment and initial inventory search of [the vehicle] was unlawful was not raised before the Supreme Court and is therefore unpreserved for appellate review." *See* S.R. 1199. And the Appellate Division noted that although Petitioner's "challenges to the lawfulness of the traffic stop and the credibility of Officer Sepulveda are preserved for appellate review," Petitioner's "more specific appellate arguments now advanced on appeal pertaining to Officer Sepulveda's tint test training or experience, the time of the initial stop, the timing of the tint test at the precinct, and the presence of side mirrors on [the vehicle] are unpreserved for appellate review" and "the failure of [Petitioner's] counsel to preserve those discrete issues for appellate review does not, on this record, constitute ineffectiveness of counsel." *See* S.R. 1197.

By letter dated October 16, 2022, Petitioner – at the time represented by counsel – sought a certificate granting leave to appeal to the State of New York Court of Appeals (the "Court of

Appeals") from the Appellate Division's September 28, 2022 Order. *See* S.R. 1213. By November 9, 2022 letter brief in support of the request for leave to appeal, Petitioner indicated that two of the three issues raised on appeal to the Appellate Division were "relevant for the purposes of [the] leave application:" (1) "[t]he traffic stop of [Petitioner's] vehicle was unconstitutional given that the testimony supporting it was legally insufficient and, in any event, was patently incredible thus requiring that all property recovered pursuant to the stop be suppressed" and (2) "[t]he hearing court erred in failing to controvert the search warrant that was based on the material false statement that the observations establishing probable cause for the warrant were made during a purported inventory search of [Petitioner's] vehicle, although no evidence was presented that the police were required to impound the vehicle, that the search was conducted pursuant to an established procedure, or that the warrantless search leading to the issuance of the warrant was otherwise lawful." *See* S.R. 1215.

By letter dated November 21, 2022, the People opposed Petitioner's application for leave to appeal. *See* S.R. 1228-31 (arguing that Petitioner's claims "are unreviewable by [the Court of Appeals] and do not present any issues of state-wide importance").

By Order dated November 30, 2022, the Court of Appeals denied Petitioner's application for leave to appeal. *See* S.R. 1232.

## II. The Instant Petition

Petitioner, proceeding *pro se*, timely filed the instant Petition. The Court liberally construes the Petition in light of Petitioner's *pro se* status. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In the section of the pre-printed form requiring Petitioner to state "every ground on which you claim that you are being held unlawfully," Petitioner identifies three grounds: (1) "Unlawful Impoundment;" (2) "Illegal Stop;" and (3) "Unlawful inventory Search." *See* Pet. at

6-7.

With respect to the first ground, Petitioner states, *inter alia*: "I was deprived of a full and fair hearing on my fourth amendment claim contesting the unlawful impoundment of my vehicle due to an unconscionable breakdown in the underlying process, intellectual dishonesty and an inadequate state procedural bar that served the purpose of 'ambushing . . . the defendant by unanticipated and unfor[e]seeable application of a state court procedural rule at a time when it can no longer be complied with' which constitutes an unconscionable breakdown." *See* Pet. at 10 (ellipsis in original). Petitioner argues, *inter alia*, that there was "interference by officials; the officials being the Appellate Division judges who made compliance 'impracticable;'" that "[t]he judges in the appellate division formed an 'external impediment preventing counsel from raising the claim;'" that Petitioner's "contention that the impoundment of [the vehicle] was unlawful was raised before the Supreme Court and is preserved;" that "the state did not look at the appropriate body of decisional law;" and that "[w]here the state System is willing to use contradictory assertions, look at the wrong body of decisional law, and use []unanticipated and unfor[e]seeable application of a procedural bar at a time when it can no longer be complied with to discourage higher courts from reaching [Petitioner's] fourth amendment claim that constitutes an unconscionable breakdown and implies refusal by the state judiciary to take seriously [its] obligation to adju[di]cate claims under the fourth amendment." *See* Pet. at 11-13.

With respect to the second ground, Petitioner states, *inter alia*: "I was deprived of a full and fair hearing on my fourth Amendment claim that I was entitled to su[p]pression of evidence obtained from an 'illegal car stop' as fruits of the poisonous tree due to an 'unconscionable breakdown' in the underlying process and an inadequate procedural bar." *See* Pet. at 13. Petitioner argues, *inter alia*, that "[t]he Appellate division is wrong" and that Petitioner "did in

fact preserve" the arguments "pertaining to Officer Sepulveda's tint test training or experience, the time of the initial stop, the timing of the tint test at the precin[c]t, and the presence of side mirrors," *see* Pet. at 13; that "[w]here the Appellate Division unfairly deemed [Petitioner's] conte[n]tion[s] unpreserved it cannot be said that [Petitioner] was provided a fair process," *see* Pet. at 14; and that "not only did the Appellate division 'ambush' [Petitioner] by the unanticipated and unforeseeable application of a state court procedural rule at a time when it can no longer be complied with[] but []there was knowing use of perjured testimony by the prosecution, and the state provided no fair process, direct or collateral, for the testing of these allegations themselves" and "[t]hus two separate criteria have been met to show an 'unconscionable breakdown' in the underlying process," *see* Pet. at 17.

With respect to the third ground, Petitioner states, *inter alia*: "I was deprived of a Full and Fair Hearing of my Fourth Amendment claim that 'The Hearing court erred in failing to controvert the search warrant that was based on the material false statement that the observations establishing probable cause for the warrant were made during a purported inventory search'" and "[d]ue to an 'unconscionable breakdown in the underlying process' where an inadequate state procedural bar was used to serve the purpose of 'ambushing . . . the defendant by unanticipated and unforeseeable application of a state court procedural rule at a time when it can no longer be complied with' which constitutes an unconscionable breakdown in the underlying process." *See* Pet. at 18 (ellipsis in original). Petitioner argues, *inter alia*, that "[i]n this case the cause is attributable to interference by officials, the officials being the Appellate Division who 'made compliance impracticable;'" that "[t]he judges in the Appellate Division formed an 'external impediment preventing counsel from . . . raising the claim;'" that his "contention on appeal that the initial inventory search of [the vehicle] was unlawful was raised before the Supreme Court

and is preserved;" that "the dissenting Judges discussed in detail why this issue had in fact been preserved, identifying the specific locations in the record where they had been raised by [Petitioner], and the manner in which they were addressed by the Supreme Court;"[8] that "[i]t cannot be said that [Petitioner] had a 'realistic opportunity' to litigate [his] fourth amendment;" that not only did the Appellate Division "ambush" him "'by unanticipated and unforeseeable application of a state court procedural rule at a time when it can no longer be complied with' but also blindsided [him] as a litigant, by decid[ing] [his] claim on a rationale that the people did not even advance;" and that "[t]he totality of these circumstances constitutes an 'unconscionable breakdown in the underlying process.'" *See* Pet. at 18-20 (ellipsis in original).

On February 2, 2024, Respondent filed a Memorandum of Law in Opposition to the Petition. *See* Memorandum of Law in Opposition to Habeas Corpus Petition ("Resp't Br."), ECF No. 8-2; *see also* Answer & Declaration in Opposition to Habeas Corpus Petition, ECF No. 8. Respondent argues that Petitioner's Fourth Amendment claims are not cognizable because he had opportunity to fully and fairly litigate them in state court, noting that Petitioner's claim is barred under *Stone v. Powell*, 428 U.S. 465 (1976), *see* Resp't Br. at 14-17; that Petitioner's allegations of error in state court factual, legal, and preservation determinations are insufficient to show an unconscionable breakdown in New York corrective process for Fourth Amendment claims, *see* Resp't Br. at 17-22; and that the *Stone* bar is different and more demanding than the requirement that state procedural bars be "adequate and independent" or the requirement of "cause and prejudice" to overcome procedural default, *see* Resp't Br. at 22-25 (arguing, *inter alia*, that "[a]pplying the preservation rule in circumstances where it is not firmly established and

[8] Petitioner's reference to discussion by "the dissenting Judges" is an apparent reference to the September 28, 2022 concurrence in part and dissent in part. *See* S.R. 1200-12.

regularly followed affects outcome, but does not equate to an unconscionable breakdown in the underlying process;" that the "fact that a rule application is exorbitant or arbitrary does not make it 'unconscionable;'" that "the breakdown standard must necessarily require more than the adequacy standard, because *Stone* would otherwise become superfluous wherever a state court applied a procedural bar;" and that "[i]n any event, in this case, the Appellate Division's application of the preservation rule constituted an adequate and independent state law ground barring habeas review").[9]

On February 29, 2024, Petitioner filed a reply. *See* Memorandum of Law in Opposition to Habeas Corpus Response, ECF No. 9 (noting Petitioner's disagreement with certain of the factual assertions and arguments made by Respondent and arguing, *inter alia*, that "[t]he procedural shortcoming that frustrated [Petitioner's] attempts to litigate [his] claims constitutes an 'unconscionable breakdown'" and that the Petition should be granted "on the grounds that the Appellate Division only barred [his] grounds out of fear that a higher court would actually take seriously its obligation to adju[di]cate [his] claim under the Fourth Amendment").

**FEDERAL REVIEW OF STATE CONVICTIONS**

To determine whether a petitioner is entitled to a writ of habeas corpus, a district court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides in relevant part:

---

9 Respondent further argues: "[P]etitioner's compliance [with New York's preservation rule] would have served vital state interests, by enabling the trial court to correct the alleged error or at least ensuring that appellate review could occur upon an adequate factual record. Had petitioner . . . alerted the prosecution to a need for proof that the impoundment and inventory search comported with local law or NYPD policy, the prosecution could have presented evidence on that issue. Had petitioner objected to the absence of testimony on Sepulveda's tint training and experience, the prosecution could have elicited testimony on that issue. Had petitioner so raised all of his specific claims, there is no reason to doubt that the Appellate Division would have reviewed them." *See* Resp't Br. at 24-25.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*See* 28 U.S.C. § 2254(d).

"AEDPA establishes a deferential standard of review: 'a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decisions applied clearly established federal law erroneously or incorrectly. Rather, that application must be unreasonable.'" *See Love v. Superintendent of Otisville Corr. Facility*, No. 16-CV-02937, 2017 WL 4233011, at *3 (E.D.N.Y. Sept. 22, 2017) (quoting *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001)). "A federal court may reverse a state court ruling only where it was so lacking in justification that there was no possibility for fairminded disagreement." *Sutton v. Royce*, No. 20-CV-02844, 2024 WL 1073150, at *5 (E.D.N.Y. Mar. 12, 2024) (alterations accepted) (quoting *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012)); *see also Woods v. Donald*, 575 U.S. 312, 316 (2015) (noting that "AEDPA's standard is intentionally difficult to meet" (quotation omitted)).

Further, "[a] federal court cannot review a habeas petition unless the petitioner 'has exhausted the remedies available' in state courts." *See Sutton*, 2024 WL 1073150, at *5 (quoting 28 U.S.C. § 2254(b)(1)(A));[10] *see also Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014)

[10] 22 U.S.C. § 2254(b)(1) provides in full: "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it

(noting that exhaustion "requires that the prisoner fairly present his constitutional claim to the state courts, which he accomplishes by presenting the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it" (quotations omitted)); *Love*, 2017 WL 4233011, at *4 (discussing exhaustion requirements, including what it means to "fairly present" claims in state court).

"Moreover, 'federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment.'" *Sutton*, 2024 WL 1073150, at *6 (quoting *Cone v. Bell*, 556 U.S. 449, 465 (2009)). Accordingly, "if the state court refused to consider an argument because it was procedurally barred under state law, the argument is barred from federal habeas review so long as the procedural bar is 'adequate to support the judgment.'" *See id.* (quoting *Murden v. Artuz*, 497 F.3d 178, 191-92 (2d Cir. 2007)). "A petitioner's failure to comply with a state procedural rule qualifies as such an adequate and independent state ground, provided that (1) the state court actually 'relied on the procedural bar as an independent basis for its disposition of the case' and (2) the state procedural rule is 'firmly established and regularly followed.'" *Id.* (first quoting *Harris v. Reed*, 489 U.S. 255, 261-62 (1989); then quoting *James v. Kentucky*, 466 U.S. 341, 348 (1984)).

## DISCUSSION

### I.  Applicable Law

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground

---

appears that— (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant."

that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone*, 428 U.S. at 494 (footnotes omitted); *see also Ethridge v. Bell*, 49 F.4th 674, 684 (2d Cir. 2022) (noting that "*Stone* imposes a prudential limitation on a petitioner's ability to obtain habeas relief on the ground that the state court declined to suppress evidence obtained in an unlawful search" and that "*Stone* applies irrespective of the merits of the underlying Fourth Amendment claim"). "[O]nce it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief." *Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002). A petitioner may, however, obtain habeas relief "if he shows that the state denied him an opportunity for full and fair litigation of his Fourth Amendment claim." *See Ethridge*, 49 F.4th at 684 (citing *Stone*, 428 U.S. at 494 n.37). "To do so, a petitioner must establish either that 'the state has provided no corrective procedures at all to redress the alleged fourth amendment violations,' or, 'if the state has provided a corrective mechanism,' that the petitioner 'was precluded from using that mechanism because of an unconscionable breakdown in the underlying process.'" *Id.* (quoting *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992)); *see also Sutton*, 2024 WL 1073150, at *7. A petitioner's failure to preserve a claim in state court does not equate to the denial of an *opportunity* for full and fair litigation of the claim. *See, e.g.*, *Blocker v. Graham*, No. 17-CV-06648, 2022 WL 309952, at *15 (W.D.N.Y. Feb. 2, 2022).

"The Second Circuit has long held that New York's procedure for litigating Fourth Amendment claims is facially adequate." *Sutton*, 2024 WL 1073150, at *7; *see also Capellan*, 975 F.2d at 70 n.1 (noting that "the federal courts have approved New York's procedure for litigating Fourth Amendment claims . . . as being facially adequate" and collecting cases

(quotation omitted)). "Therefore, because New York has provided a 'corrective mechanism,' [a petitioner] may only obtain habeas relief if he can establish that he was 'precluded from using that mechanism because of an unconscionable breakdown in the underlying process.'" *Sutton*, 2024 WL 1073150, at *7 (quoting *Ethridge*, 49 F.4th at 684). "To establish such a breakdown, the petitioner would have to prove that the state system failed to conduct a reasoned method of inquiry into relevant questions of fact and law," which is a "stringent standard." *See id.* (quotations omitted); *see also Love*, 2017 WL 4233011, at *6 (noting that in *Capellan*, the Second Circuit gave a few examples of the sort of disruption or obstruction of a state proceeding typifying an unconscionable breakdown – including if the trial court yielded to mob intimidation of the jury – and distinguishing those examples); *Ramos v. Goodman*, No. 23-CV-04762, 2024 WL 4354863, at *10 (S.D.N.Y. Sept. 27, 2024) (noting that a "'mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process'" and that an "unconscionable breakdown in the underlying process occurs when 'the totality of state procedures allegedly did not provide rational conditions for inquiry into federal law'" (quoting *Capellan*, 975 F.2d at 72, 70); stating that "[e]xamples of unconscionable breakdowns in the underlying procedure include, but are not limited to, the bribing of a trial judge, the government's knowing use of perjured testimony, or the use of torture to extract a guilty plea, all without opportunity to obtain state review" (quotation omitted); and distinguishing those examples).

## II.     The Petition is Denied

The record reflects that the State provided an opportunity for full and fair litigation of Petitioner's Fourth Amendment claims and therefore Petitioner may not be granted federal

habeas corpus relief on the grounds raised in the Petition. *See Stone*, 428 U.S. at 494.[11]

As an initial matter, Petitioner does not appear to argue that New York "has provided no corrective procedures at all" to redress the alleged Fourth Amendment violations, nor would any such argument be supported by the applicable law as set forth above, *see Capellan*, 975 F.2d at 70 n.1; *Sutton*, 2024 WL 1073150, at *7, or by the record here, which reflects the existence of corrective procedures.

Because New York has provided a corrective mechanism, Petitioner may only obtain habeas relief if he can establish that he was "precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *See Ethridge*, 49 F.4th at 684 (quotation omitted); *see also Sutton*, 2024 WL 1073150, at *7. Petitioner has failed to do so here. To the contrary, the record reflects that Petitioner had available to him procedures to allow him to be heard on his Fourth Amendment claims fully and fairly. And the record reflects that Petitioner in fact availed himself of various procedures that allowed him to be heard.

As set forth above, Petitioner, while represented by counsel, *inter alia*: (1) filed the Motion to Suppress and the Motion to Controvert; (2) thereafter was afforded a hearing at which Officer Sepulveda was questioned, including by Petitioner's counsel, as to events relevant to Petitioner's Fourth Amendment claims; (3) received a decision on his motions; (4) filed an appeal of the judgment of conviction, raising issues relevant to his Fourth Amendment claims; (5) received a decision from the Appellate Division with respect to his appeal; (6) sought leave to appeal further to the Court of Appeals, raising issues relevant to his Fourth Amendment claims;

---

[11] The Court notes that Petitioner appears to have exhausted the remedies available in state court with respect to the grounds raised in the Petition and Respondent does not appear to argue otherwise.

and (7) received a decision from the Court of Appeals on his request for leave.[12]

The record does not reflect that Petitioner was precluded from using New York's corrective mechanism with respect to Fourth Amendment claims. Neither Petitioner's disagreement with the merits-based and/or preservation-based rulings in state court nor his criticism of the state court judges who rendered such rulings establishes any unconscionable breakdown. *See Capellan*, 975 F.2d at 72; *Sutton*, 2024 WL 1073150, at *8.

* * *

Petitioner is not entitled to relief on any of the grounds raised in the Petition. The Petition must therefore be denied.[13]

**CONCLUSION**

For the reasons set forth above, the Petition, ECF No. 1, is DENIED.

The Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2). Petitioner, however, has a right to seek a certificate of appealability from the United States Court of Appeals for the Second Circuit. *See* 28 U.S.C. § 2253(c).

The Court certifies pursuant to 28 U.S.C. 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore denies *in forma pauperis* status for the purpose of

---

[12] As set forth above, Officer Sepulveda testified at trial and was cross-examined by Petitioner's counsel. Respondent states that "at trial petitioner never sought to renew his suppression motion or reopen the suppression hearing" and that his "failure to thus enlarge the suppression record barred him from relying on trial evidence to support his suppression argument on appeal." *See* Resp't Br. at 9.

[13] As Respondent argues, even setting aside the *Stone* bar, New York's preservation rule would constitute an adequate and independent state law ground barring federal habeas review as to those of Petitioner's claims that the Appellate Division deemed unpreserved. *See* Resp't Br. at 22-25; *see also Whitley v. Ercole*, 642 F.3d 278, 292 (2d Cir. 2011) (discussing the application of New York's "well-established and generally valid contemporaneous objection rule" as an adequate and independent state law ground barring habeas review); *Downs v. Lape*, 657 F.3d 97, 102-08 (2d Cir. 2011).

an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to enter judgment, close this case, and mail a copy of this Order to Petitioner.

SO ORDERED.

*/s/ Diane Gujarati*
DIANE GUJARATI
United States District Judge

Dated: November 6, 2024
Brooklyn, New York